WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Guillermo Juarez and Olivia Juarez, husband and wife,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>CC Services, Inc., a foreign corporation, dba Country Companies and/or Country Mutual Insurance Companies; ABC Corporations and/or Companies,<br><br>　　　　Defendants. | No. 05-1223-PHX-ROS<br><br>**OPINION AND ORDER** |

Both Plaintiffs and Defendants have filed a Motion for Summary Judgment. For the following reasons, Plaintiffs' motion will be denied and Defendants' motion will be granted.[1]

**BACKGROUND**

Between 1997 and 2002, Plaintiff Guillermo Juarez ("Juarez") worked at residential home construction sites operated and controlled by Westarz Homes, L.L.C. (Id. ¶ 9) (Defendants' Statement of Facts "DSOF" Exhibit 5) Kim Westberg was the principal of

---

[1] The Court did not set oral argument because the parties submitted memoranda thoroughly discussing the law and evidence in support of their positions, and oral argument would not have aided the Court's decision. See Mahon v. Credit Bur. of Placer County, Inc., 171 F.3d 1197, 1200 (9th Cir. 1999).

Westarz. (Id. ¶ 9) He hired or contracted with Travis Bever ("Bever") "to act as a superintendent" at various construction sites operated by Westarz. (Id. ¶ 9) Bever's responsibilities at those sites included supervising sub-contractors, overseeing the progress of construction, and hauling trash from the sites to local landfills. (DSOF ¶ 14, Bever Depo. 31) Westarz provided a dump truck for Mr. Bever to haul the trash. (Id.) This truck belonged to Mr. Westberg and it was insured by an automobile insurance policy with Defendant Country Mutual Insurance Company ("Country"). (Bever Depo. 31, DSOF ¶ 5)

On January 31, 2002, Juarez and Bever were working at a Westarz operated construction site in Phoenix. (DSOF Ex. 5) While backing the dump truck down a driveway, Bever struck Juarez, crushing his left arm and shoulder. (DSOF Ex. 5) As a result of that accident, Juarez was unable to work and he filed for worker's compensation benefits. (Id.) After filing for benefits, Juarez learned that Westarz did not have workers' compensation insurance. Westarz justified this failure by claiming that it did not have any employees. (DSOF Ex. 6) In light of Westarz's lack of insurance, Juarez requested compensation from the Special Fund.[2] (DSOF Ex. 6) The Special Fund concluded that Juarez was entitled to benefits. (DSOF Ex. 7) Westarz sought review of the Special Fund's decision, arguing that Juarez had not been an employee and was therefore not entitled to compensation from the Special Fund. In responding to the request for review of the Special Fund's decision, Juarez set forth that he was an employee of Westarz. Juarez argued when "determining whether a person is an independent contractor or an employee, the [Special Fund] should consider the various indicia of control, which include the duration of the Applicant's employment, the method of payment, the right to hire and fire, who furnishes equipment, whether the work was performed in the usual and regular course of the employer's business, and the extent to

---

[2] Employees working for an uninsured "employer" may seek compensation from a "Special Fund" established by statute. See Uzoh v. Indus. Comm'n of Ariz., 762 P.2d 600, 601 (Ariz. Ct. App. 1988) (stating that when injured employee learned his employer was uninsured he could either file suit in superior court or seek compensation from the Special Fund).

which the employer may exercise control over the details of the work." (DSOF Ex. 10) Juarez claimed that all of these factors were in his favor because he "had worked for [Westarz] for a long period of time," he had worked at multiple construction sites run by Westarz, he was paid a "set weekly salary," "[h]e did not pay for any of the costs of the business," his work was "performed in the usual and regular course of [Westarz's] business," and his activities were controlled by Westarz. The Special Fund's decision was sustained and Juarez received benefits. As of September 2004, Juarez had received over $52,000 from the Special Fund. (DSOF Ex. 9)

On January 27, 2003, Juarez and his wife Olivia Juarez filed suit against Bever and his construction company, T. Bever Construction, L.L.C. (DSOF Ex. 8) Juarez alleged that Bever's negligence in operating the dump truck caused Juarez's injury. Juarez sought "special damages and losses" as well as "general damages" to both Juarez and his wife. Bever believed that the insurance policy for the dump truck issued by Country was applicable. Thus, Bever tendered the defense to Country. (PSOF Ex. 3) Country responded in writing, stating that coverage did not exist under the policy. Specifically, Country believed that two policy exclusions applied to Juarez's claim. The policy exclusions cited by Country stated that no coverage existed for

> 1) "bodily injury to anyone eligible to receive benefits which you [Westarz] either provide or are required to provide under any workers' compensation, disability benefits, or any similar law;" and
> 2) "bodily injury sustained by your [Westarz's] employee in the course of employment for you."

Country claimed that once Juarez was determined to be an employee and workers' compensation coverage became available, the first exclusion applied. Also, "because Mr. Juarez was an employee in the course of employment for Westarz, exclusion number [two]" precluded coverage. (PSOF Ex. 4) According to Country, "[w]hether Bever [was] an employee of Westarz is an open question, but not relevant to the question of liability coverage . . . under the Westarz policy."

1  Bever obtained independent counsel and answered the complaint. In his answer,
2  Bever asserted that he was a co-employee of Juarez and Juarez's "exclusive remedy [was]
3  under the Workers Compensation laws of the State of Arizona." (PSOF Ex. 4) Bever and
4  Juarez eventually entered into an agreement pursuant to Damron v. Sledge, 460 P.2d 997
5  (Ariz. 1969). Judgment was entered against Bever for the amount of $600,000 and Bever
6  assigned his claims against Country to Juarez. Juarez later instituted this declaratory
7  judgment action against Country, alleging breach of contract and failure to defend (bad
8  faith).

## ANALYSIS

### I. Jurisdiction

Juarez and his wife are residents of Arizona. Country is a corporation with its principal place of business and state of incorporation is Illinois. (Doc. 1) The amount in controversy exceeds $75,000. (Id.) The Court has jurisdiction pursuant to 28 U.S.C. 1332(a) (diversity jurisdiction).

### II. Applicable Law

"[F]ederal courts sitting in diversity jurisdiction apply state substantive law and federal procedural law." Freund v. Nycomed Amersham, 347 F.3d 752, 761 (9th Cir. 2003). The parties agree that Arizona law applies to Plaintiff's claims. Thus, the Court will use Arizona law where appropriate.

### IV. Summary Judgment Standard

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Substantive law determines which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In

1  addition, the dispute must be genuine, that is, "the evidence is such that a reasonable jury
2  could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.
3      Furthermore, the party opposing summary judgment "may not rest upon the mere
4  allegations or denials of [the party's] pleading, but . . . must set forth specific facts showing
5  that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Matsushita Elec. Indus. Co.,
6  Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). There is no issue for trial unless
7  there is sufficient evidence favoring the non-moving party; "[i]f the evidence is merely
8  colorable, or is not significantly probative, summary judgment may be granted." Anderson,
9  477 U.S. at 249-50 (citations omitted). However, "[c]redibility determinations, the weighing
10 of the evidence, and the drawing of legitimate inferences from the facts are jury functions,
11 not those of a judge." Id. at 255. Therefore, "[t]he evidence of the non-movant is to be
12 believed, and all justifiable inferences are to be drawn in his favor" at the summary judgment
13 stage. Id.

14 **V. Collateral Estoppel**

15     A crucial issue is the employment status of Bever. If Bever were an employee of
16 Westarz at the time of the accident the workers' compensation statutes and perhaps certain
17 policy exclusions would prevent Juarez from recovering from Bever.[3] If, however, Bever
18 was not an employee of Westarz, the workers' compensation statutes would not prevent
19 Juarez' recovery and the Court would have to determine if the policy exclusions are valid and
20 enforceable. A.R.S. § 23-1023 ("If an employee entitled to [workers' compensation] is

---

[3] A combination of a number of workers' compensation statutes would prevent Juarez' suit. See A.R.S. § 23-1022 (stating that workers' compensation "is the exclusive remedy against the employer or any co-employee acting in the scope of his employment"); A.R.S. § 23-907(B) (stating employee that works for an uninsured employer may either file suit or seek compensation from the Special Fund); A.R.S. § 23-1024 (providing that injured employee who accepts workers' compensation waives his right to institute other proceedings). Also, certain policy exclusions might apply if Juarez and Bever were co-employees. See DSOF ex. 2 p.5 (stating that insurance policy did not provide coverage for employee subject to workers' compensation or for "bodily injury sustained by [Westarz'] employee in the course of employment for [Westarz]").

- 5 -

injured . . . by the negligence or wrong of another not in the same employ, such injured employee . . . may pursue his remedy against such other person."). Juarez believes that the state court judgment could not have been entered if Bever were an employee of Westarz because of the statutory preclusion of suits between co-employees. A.R.S. § 23-1022. Thus, Juarez argues that the state court's judgment contains an implicit finding that Bever was not an employee of Westarz and collateral estoppel prevents Country from challenging that finding now. Country responds that collateral estoppel does not apply because there was a conflict of interest between Bever and Country at the time the state court judgment was entered. The Court agrees with Country.

Generally, if an "insurance company refuses to defend an action under circumstances where it has a duty to defend, it is bound under the doctrine of collateral estoppel by the facts determined in the trial of such action which are essential to the judgment of tort liability." Farmers Ins. Co. of Ariz. v. Vagnozzi, 675 P.2d 703, 705 (Ariz. 1983). But collateral estoppel "is predicated upon an assumed identity of interests" between the insured and insurer. Id. at 706. And "where there is a conflict of interest between an insured and his insurer, the parties will not be estopped from litigating in a subsequent proceeding those issues as to which there was a conflict of interest, whether or not the insurer defended in the original tort claim." Id. at 708.

The Arizona Supreme Court relies on the Restatement (Second) of Judgments for the definition of a conflict of interest. Id. That definition states a conflict of interest "exists when the injured person's claim against the [insured] is such that it *could* be sustained on different grounds, one of which is within the [insurer's] obligation to indemnify and another of which is not." Id. (quoting Restatement (Second) of Judgments § 58(2) (1982)) (emphasis added). Pursuant to this definition, a conflict of interest existed between Bever and Country. Country's obligation to indemnify depended on Bever's employment status. If Bever were an employee of Westarz, the workers' compensation statutes, and possibly the policy exclusions, would preclude any recovery by Juarez. If, however, Bever were found *not* to

- 6 -

be an employee, the workers' compensation statutes would not bar the suit and the parties would have to litigate the enforceability of the policy exclusions. If those policy exclusions were found enforceable, Country would not have to indemnify Bever; but if the policy exclusions were found unenforceable, Country would have to indemnify. Thus, Bever had an incentive to stipulate that he was not an employee and allow judgment be taken against him. By doing so, Bever prevented the possible outcome of a court determining he was not a co-employee, ruling the policy exclusions enforceable, and finding he was personally liable to Juarez for his injuries. See Vagnozzi, 675 P.2d at 708 (finding insurer was not collaterally estopped from asserting a policy exclusion for intentional torts when insured had consented to judgment that he had been negligent); United Services Auto. Ass'n v. Morris, 741 P.2d 246, 253 (Ariz. 1987) ("[A]ny stipulation of facts essential to establishing coverage would be worthless."). By agreeing to the judgment, Bever ensured that Juarez would not pursue his personal assets but would ask Country to satisfy the judgment.[4] Because of the conflict of interest between Bever and Country, the state court judgment cannot act as a bar on Country litigating the employment status of Bever.

## VI. Employment Status

Country wishes to establish Bever and Juarez were co-employees because the workers' compensation statutes bar Juarez from recovering anything from a co-employee. A.R.S. 23-1024. Both parties have moved for summary judgment on the employment status of Bever. Summary judgment on the issue of employment status is "appropriate only '[i]f the inference . . . is clear that [a] master-servant relationship exist[ed].'" Mitchell v. Gamble, 86 P.3d 944, 949 (Ariz. Ct. App. 2004) (quoting Santiago v. Phoenix Newspapers, Inc., 794 P.2d 138, 141 (Ariz. 1990)). The parties agree on the factors relevant to the determination of Bever's employment status pursuant to the workers' compensation statutes. (Doc. 15 p. 6, Doc. 20 p. 6) Those factors include

---

[4] Juarez stated in his complaint that Bever entered into the Damron agreement "to protect [his] personal assets." (Doc. 1)

- 7 -

> 1. The extent of control exercised by the master over details of the work and the degree of supervision;
>
> 2. The distinct nature of the worker's business;
>
> 3. Specialization or skilled occupation;
>
> 4. Materials and place of work;
>
> 5. Duration of employment;
>
> 6. Method of payment;
>
> 7. Relationship of work done to the regular business of the employer;
>
> 8. Belief of the parties.

Santiago, 794 P.2d at 142.[5] "No one factor is in itself controlling," Ringling Bros. & Barnum & Bailey Combined Show, Inc. v. Superior Court, 680 P.2d 174, 178 (Ariz. Ct. App. 1984), so a court must "consider the totality of the circumstances." Mitchell v. Gamble, 86 P.3d 944, 948 (Ariz. Ct. App. 2004). Also, '[n]either the presence nor the absence of a written contract controls the resolution of whether the claimant is an employee." Swichtenberg v. Brimer, 828 P.2d 1218, 1224 (Ariz. Ct. App. 1991). Evaluating the facts in this case in light of the relevant factors leads to the conclusion that Bever was an employee of Westarz.

**A. Extent of Control**

"A strong indication of control is an employer's power to give specific instructions with the expectation that they will be followed." Santiago, 794 P.2d at 142-43. Bever and Westberg both stated in their depositions that Westberg retained ultimate control over the job

---

[5] Another court has emphasized a test premised on four factors. "[E]mployment can often be solidly demonstrated on the strength of one of four factors: (1) evidence of actual control exercised by the 'employer' and submitted to by the 'employee;' (2) the method of payment, whether on a time, piecework or commission basis, or on a completed project basis; (3) whether the 'employer' furnishes the 'employee' with valuable equipment; and (4) whether the 'employer' has the right to terminate the relationship without liability." Swichtenberg v. Brimer, 828 P.2d 1218, 1224 (Ariz. Ct. App. 1991). Because the two tests substantially overlap, the Court uses the test set out in Ringling Bros., 680 P.2d at 178-79.

sites.  (DSOF ¶ 11)   Bever's deposition contains the following exchange.

> Question: If Mr. Westberg would have given you some instructions to do something specific, would you have done them?
>
> Bever: Yes.
>
> Question: Why is that?
>
> Bever: Because it's his project. He's the boss . . . .

Westberg had the authority to give specific instructions and Bever understood that he had to follow such instructions. This was recognized by Juarez before the Industrial Commission. According to a document filed by Juarez, "Mr. Westberg may not have been at every job site, every hour of every day, [but] he clearly had the right to control the details of all the workers' activities and any final decisions as to the details of the work were ultimately his." (DSOF ex. 10 p. 4)  This factor weighs in favor of finding Bever was an employee.

### B. Distinct Occupation

"Whether the worker's tasks [were] efforts to promote his own independent enterprise or to further his employer's business" helps determine if an employer-employee relationship existed. Id. at 143. Bever's efforts were aimed at furthering Westarz' business of building homes. This weighs in favor of finding Bever was an employee.

### C. Skilled Occupation

An employer-employee relationship is more likely present when "the work does not require the services of one highly educated or skilled." Id. Bever had extensive experience in the construction business. (DSOF ¶ 21) The parties did not, however, point to evidence in the record establishing that Bever possessed or did not possess skills especially important to his job. This factor does not favor either party.

### D. Materials and Place of Work

"If an employer supplies tools, and employment is over a specific area . . . a master-servant relationship is indicated." Id. at 144. Bever worked at a variety of Westarz job sites

and used his own vehicle to travel between sites. (DSOF ¶ 24) Bever also used his own phone at the job sites. (Id.) Westarz provided blueprints and building materials. (DSOF ¶ 25) Westarz also provided the truck that was involved in the accident and Westarz would reimburse Bever if he had to pay for an item out-of-pocket related to the job sites. (DSOF ¶¶ 26, 28) Because the job sites were dictated by Westarz and Westarz provided materials Bever used at the sites, this factor weighs in favor of finding Bever was an employee.

### E. Duration of Employment

"Whether the employer seeks a worker's services as a one-time, discrete job or as part of a continuous working relationship may indicate that the employer-employee relationship exists. Id. Also, "the employer's right to terminate may indicate control and therefore an employer-employee relationship." Id. In fact, "[t]he 'right to fire' is considered one of the most effective methods of control." Id. Bever began his working relationship with Westberg in 1998. (DSOF ¶ 9, ex. 4 p. 13) The relationship continued until 2002. (DSOF ¶ 29) During this time period, Bever would work on any Westarz job site that needed him and he did not work for anyone other than Westarz. (DSOF ex. 4 p. 15, 19) Also, both Bever and Westberg believed that Westberg could fire Bever at any time. (DSOF ¶ 15) In fact, Westberg fired Bever when he could no longer afford to pay him. (DSOF ex. 4 p. 22) The duration of Bever's relationship with Westarz favors finding Bever was an employee.

### F. Method of Payment

"Payment on a time basis is a strong indication of the status of employment. Payment on a completed project basis is indicative of independent contractor status. Payment on a piece-work or commission basis is consistent with either status." Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 61.06 (2005).[6] Bever was paid a set salary every Friday. (DSOF ex. 4 p. 17) Payment was issued to T. Bever Construction, L.L.C. and

---

[6] Arizona courts often rely on Larson's when addressing workers' compensation issues. See, e.g., Grammatico v. Indus. Comm'n, 117 P.3d 786, 790 (Ariz. 2005) (citing to Larson's); Hypl v. Industrial Comm'n, 111 P.3d 423, 427 (Ariz. Ct. App. 2005) (same) (Ariz.App. Div. 2, 2005).

- 10 -

Westarz did not withhold any taxes. (DSOF ex. 4 p. 18) Bever's L.L.C. was set up at the request of Westberg for "tax purposes." (DSOF ex. 4 p. 38) The regular payment of a set salary weighs in favor of an employer-employee relationship but Westarz' failure to withhold taxes weighs in favor of the opposite conclusion. The payment method, however, was apparently devised for tax purposes rather than an attempt to reflect a true independent contractor relationship. Thus, this is another factor in favor of finding Bever was an employee.

### G. Regular Business of Employer

"A court is more likely to find a worker an employee if the work is part of the employer's regular business." Santiago, 794 P.2d at 144. There is no dispute that Westarz and Westberg were in the business of building homes. Bever's duties included "overseeing what's going on [at the sites], checking on everything, checking on the progress, [and] changing things." (DSOF ex. 4 p. 24) Thus, Bever's activities were "an integral part of [Westarz'] business." Anton v. Indus. Comm'n of Ariz., 688 P.2d 192, 199 (Ariz. Ct. App. 1984). This weighs in favor of finding Bever was an employee.

### H. Parties' Belief

Arizona courts have provided somewhat inconsistent statements regarding the impact of the parties' beliefs. In Swichtenberg v. Brimer, 828 P.2d 1218, 1224 (Ariz. Ct. App. 1991), the court observed that "[t]he parties' own subjective beliefs or opinions concerning the nature of their relationship are immaterial." But in Santiago, 794 P.2d at 145, the Arizona Supreme Court quoted the Restatement of Agency's formulation that the parties' beliefs are not "determinative" but may be helpful. The formulation in Santiago controls. See Gravquick A/S v. Trimble Navigation Intern. Ltd., 323 F.3d 1219, 1222 (9th Cir. 2003) ("A federal court applying California law must apply the law as it believes the California Supreme Court would apply it."). In this case, the parties expressed the belief that an employer-employee relationship had not been established. (PSOF 1) Bever also stated, however, that he was a "co-employee" of Juarez. (DSOF ex. 4 p. 43) Because of Juarez's

and Bever's statements in this case that they are not co-employees, a credibility issue exists which precludes a finding as a matter of law in favor of either party on this issue.

In light of all these factors, "the inference . . . is clear that [a] master-servant relationship exist[ed]." Mitchell v. Gamble, 86 P.3d 944, 949 (Ariz. Ct. App. 2004) (quoting Santiago, 794 P.3d at 141). Westberg exercised ultimate control over all of Bever's activities, Bever's activities were meant to further the interests of Westarz, Westarz provided materials necessary for Bever's job, Westarz dictated where Bever would work, Bever and Westarz had a four-year exclusive relationship, Bever was paid a set amount each week, and Bever provided a vital service to Westarz' business. These facts are very similar to the facts Juarez argued to the Special Fund when he sought to obtain workers' compensation benefits. (DSOF Ex. 10) Thus, just as Juarez was found to be an employee, Bever was also an employee at the time of the accident.

Juarez and Bever were co-employees and Juarez has already sought workers' compensation benefits for his injury. Accordingly, Arizona law precluded Juarez from bringing suit against Bever for additional compensation. A.R.S. § 23-1022. The fact that Bever eventually allowed judgment be taken against him does not control here. Country's policy was not implicated by the accident and the Court need not address the viability of the policy exclusions.

Therefore,

**IT IS ORDERED** Defendant's Motion for Summary Judgment (Doc. 15) is **GRANTED**.

**IT IS FURTHER ORDERED** Plaintiff's Motion for Summary Judgment (Doc. 16) is **DENIED**.

DATED this 6/14/06

Roslyn O. Silver
United States District Judge